UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

EARL L. ANDERSON, JR.                                                                          PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:16cv37-DPJ-FKB

MAURICE FLEMMING, MHP, et al.                                                              DEFENDANTS

ORDER

This pro se prisoner case is before the Court on the Motion to Dismiss, for Summary Judgment, or to Require More Definite Statement [17] filed by Defendant Patricia Watts ("Watts"), identified in the Complaint as Patricia Watts Dean. For the reasons that follow, the motion is granted to the extent Watts alternatively seeks a *Spears* hearing but is otherwise denied.

I.      Background

The three-page Complaint in this case is not a model of clarity, and Plaintiff Earl L. Anderson, Jr. ("Anderson") has on two subsequent occasions attempted to explain his claims. *See* Pl.'s Resp. to Mot. to Stay [20]; Pl.'s Resp. to Show Cause Order [27]. Unfortunately, those clarifications only make it more difficult to understand the scope of this civil action. Generally speaking, Anderson complains about the circumstances surrounding his February 2, 2014 arrest, subsequent incarceration in Holmes County, Mississippi, and resulting criminal convictions.

The only moving Defendant is Watts, a Holmes County Justice Court Deputy Clerk. According to Anderson, he and Watts had a relationship more than 30 years ago, and Watts has

since claimed that Anderson is the father of her daughter. Compl. [1] at 2. Anderson says that Watts "has schemed for money and assistance from [him] and [h]is [f]amily" for years. *Id.*[1]

As it relates to this suit, Anderson contends that Watts retaliated against him for failing to provide support. More specifically, he says Watts conspired with members of the Mississippi Highway Patrol ("MHP") and others to initiate a false arrest on February 2, 2014, use excessive force during that arrest, bring false charges against Anderson, and then frustrate the defense of his criminal case. Anderson also says in his two responses that the events related to this case are intertwined with his complaints in an earlier—and still pending—federal suit he filed regarding another arrest and conviction. *See, e.g.*, Pl.'s Resp. [20] at 3 (referencing Civil Action No. 3:15-cv-603-CWR-LRA).

II. Analysis

Watts moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), for summary judgment under Rule 56, or for a more definite statement under Rule 12(e). Two initial points frame this Order. First, the Court has "complete discretion" whether to consider Watts's motion as one to dismiss or as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988) (citation omitted). In this case, Watts's motion comes before the case-management conference, it is based in part on factual determinations, and Anderson says he needs discovery. *See* Pl.'s Resp. [20] at 1, 3. Accordingly, the Court declines to convert the motion to one under Rule 56.

Second, Watts filed an answer before she filed the present motion. As such, her Rule 12(b)(6) motion must be considered under Rule 12(c), though the standards are the same. *Great*

---

[1] Watts denies that Anderson is the father of her child and further denies making any demands. But at this stage of the pleadings, the Court must view the facts in the light most favorable to Anderson.

2

*Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002). The result of answering first is more significant, however, with respect to her Rule 12(e) motion because such motions "must be made before filing a responsive pleading." Fed. R. Civ. P. 12(e).

Having said that, Watts alternatively asks for a referral to the United States Magistrate Judge for a *Spears* hearing. During such hearings, courts directly ask pro se plaintiffs to better explain their claims and then use that testimony to augment the complaint and/or test the viability of those claims under 28 U.S.C. § 1915(e) (2012); s*ee Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *abrogated in part on other grounds by Neitzke v. Williams*, 490 U.S. 319, 328 (1989). The Court is not aware of any time restrictions on a *Spears* hearing, and notes that under § 1915(e), the Court "shall dismiss the case *at any time* if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (emphasis added). And as a practical matter, *Spears* hearings often occur after a responsive pleading. *See, e.g.*, *Smith v. Lindsey*, No. 94-60272, 1995 WL 337739 (5th Cir. May 18, 1995) (affirming dismissal following post-answer *Spears* hearing).

A *Spears* hearing is needed in this case. To begin, it is difficult to discern Anderson's claims against Watts. Watts appears to assume that Anderson asserts state-law, § 1983, and habeas corpus claims against her related to the February 2, 2014 arrest. But things get more confusing in Anderson's responses [20, 27]. For example, though he was free world when he filed this suit, his response seeks habeas corpus relief. *See* Pl.'s Resp. [20] at 4 (demanding "immediate release" from custody). Yet it is not clear whether he is currently detained as a result of the charges that flowed from the February 2, 2014 arrest (the subject of his initial Complaint in this case) or from the charges he continues to address in Civil Action No. 3:15-cv-603-CWR-

LRA. The Magistrate Judge should be able to determine whether the current incarceration relates to the February 2, 2014 arrest.

Similar issues exist for Anderson's state-law and § 1983 claims. Some of the allegations in his responses clearly relate to the arrest that is the subject of his other case, some clearly relate to this case, and for others it is impossible to tell. Moreover, Anderson explains that the claims in both cases are linked by a common conspiracy between Watts and others. *See, e.g.*, *id.* at 3. The Magistrate Judge should examine the true nature of the instant claims; whether consolidation is in order; and if not, the extent to which Anderson should be allowed to amend his Complaint in the present case (if at all) to include any newly referenced claims.

The ambiguities in Anderson's claims also make it difficult to assess Watts's dispositive arguments. Here again, the Magistrate Judge can help. Watts first says that the state-law claims against her must be dismissed for lack of notice under the Mississippi Tort Claims Act ("MTCA"), Mississippi Code section 11-46-11(1) (requiring pre-suit notice of claim). But it is not entirely clear that all of Anderson's claims relate to acts falling within the MTCA. Some of Watts's alleged acts against Anderson seem to be unrelated to her government employment—like a decades-long "scheme" to milk him for child support and other payments. Compl. [1] at 2. Of course, some of those claims probably face statute-of-limitations problems.

As for the state-law claims that do relate to acts within the course and scope of Watts's employment, those claims may well be barred for failure to provide pre-suit notice. But it is impossible to tell from the Complaint whether Anderson provided the necessary notice. And even considering the record evidence under Rule 56—which the Court declines to do—the question remains unanswered.

Turning to the federal claims asserted against Watts in her individual capacity, Anderson appears to allege that Watts—motivated by a lack of child support—conspired with MHP officers and others to violate Anderson's civil rights. In particular, Anderson says that Watts threatened that he "would lose 'Everything,'" Compl. [1] at 2, and thereafter conspired to have him "unlawfully and purposely stopped, checked, and then harassed," *id.* at 1. He also claims that MHP officers "use[d] unprovoked, excessive force" on him. *Id.* Watts reads these allegations as including a Fourth Amendment false-arrest claim, which she argues is barred by the independent-intermediary doctrine. That might be, but again the record here is hard to follow and must be viewed in the light most favorable to Anderson. Moreover, Watts does not appear to assert this argument as to the other federal claims. Accordingly, this issue may also be explored during the *Spears* hearing.

Similarly, Watts makes an argument based on *Heck v. Humphrey*,[2] asserting that *Heck* "mandates dismissal of all of Plaintiff's civil claims against" her. Def.'s Mem. [18] at 8. It is certainly possible that *Heck* applies to some—if not all—of the present claims. But again the record is not clear.

> In *Heck* . . . , the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ."

*Walter v. Horseshoe Entm't*, 483 F. App'x 884, 886–87 (5th Cir. 2012) (quoting *Heck*, 512 U.S. at 486–87).

---

[2] 512 U.S. 477 (1994).

The problem with applying *Heck* on this record is threefold. First, Watts does not explain which claims are *Heck* barred and why. Second, the parties and the Court still need to sort out which claims are part of this case and which are part of the other. Third, we need to know whether Anderson's convictions were reversed on appeal. On this last point, the Abstracts of Court Record [17-6] Watts presents show that Anderson appealed the initial conviction in 2014, but the undersigned cannot tell from those documents whether that appeal has been concluded, and if so, what the result was. For his part, Anderson makes this cryptic statement in response: "Charges Dismissed." Pl.'s Resp. [7] at 6. So presently, there is no way to tell (1) whether any charges were actually dismissed and (2) if so, whether the referenced dismissal relates to the charges addressed in this case or the charges addressed in his other federal suit. Without knowing that, it is impossible to apply *Heck*. Again, the Magistrate Judge should be able to quickly clear things up.

Finally, as to the official-capacity claims, Watts she says that she "is simply not a proper official party, but instead [the proper party] is Holmes County." Def.'s Mem. [18] at 6–7. Watts's argument is a bit hard to follow. She is correct that an official-capacity claim is, in reality, a claim against the governmental entity, in this case Holmes County, Mississippi. *See Brooks v. George Cty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996). But Watts also seems to say that because she is not a policymaker, she cannot be named in her official capacity. *See* Def.'s Mem. [18] at 6. If that is her argument, then the cases she cites do not support it, and for now the official-capacity claims—construed as claims against the County—will not be dismissed on this basis.

The Court has not attempted to address Watts's defenses in great detail. As stated, there needs to be some significant clarification during the *Spears* hearing before the Court can begin a

serious analysis of the claims and defenses.  The case will therefore be referred.  After the *Spears* hearing, the Magistrate Judge should take whatever steps are then appropriate, but should consider (1) whether Anderson should be allowed to amend his Complaint consistent with the evidence, including his apparent desire to bring a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968; (2) whether any claims against some or all Defendants should be dismissed under § 1915(e); (3) whether a case-management order with deadlines for discovery and motion practice should be entered; and (4) whether this case should be consolidated with Civil Action No. 3:15-cv-603-CWR-LRA.

III.     Conclusion

IT IS, THEREFORE, ORDERED that Defendant's Motion [17] is granted to the extent she seeks referral to the Magistrate Judge for a *Spears* hearing.  The motion is otherwise denied without prejudice to reasserting these dispositive issues.

**SO ORDERED AND ADJUDGED** this the 31th day of May, 2017.

                                        s/ *Daniel P. Jordan III*
                                        UNITED STATES DISTRICT JUDGE