UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

EARL L. ANDERSON, JR.                                            PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:16-CV-37-DPJ-FKB

MAURICE FLEMING, ET AL.                                     DEFENDANTS

ORDER

As stated on the trial record, this matter is dismissed *sua sponte*. Plaintiff Earl L. Anderson, Jr., filed this lawsuit in 2016, complaining that numerous defendants mistreated him during and immediately after an arrest in February 2014. He later amended his complaint to include claims related to an arrest in August 2014. In short, Anderson says he has been beaten, detained, deprived of property, and incarcerated pursuant to a conspiracy by law-enforcement officers, deputy clerks with the Holmes County Justice Court, various judges (including two United States Magistrate Judges), the Attorney General of Mississippi, and others. According to him, the alleged conspiracy related to a scheme by a deputy clerk to extort money from Anderson based on an unsubstantiated claim that he fathered her child 30 years ago. *See generally* R&R [74] at 1–4 (recounting facts); *see also* Compl. [1] at 2.

As addressed in this Court's prior orders, all of Anderson's claims were dismissed save two: his excessive-force claims against Defendants Maurice Fleming and Fabian Wiley related to his February 2014 arrest. *See, e.g.*, Order [81]; Order [86]. Notably, the Court dismissed all claims related to Anderson's August 8, 2014 arrest because those claims were pending in a separate lawsuit Anderson filed in 2015. Order [81] at 5 (citing *Anderson v. Tchula Police Dept.*, No. 3:15-CV-603-CWR-LRA) (*Anderson I*)).

These prior rulings necessarily shaped the scope of admissible evidence at trial, something the Court explained to Anderson both verbally and in writing. The Court repeatedly instructed Anderson that he would be allowed to address only the two remaining claims regarding the events of February 2, 2014. The Court also informed Anderson that because excessive-force claims under the Fourth Amendment are based on an objective test, "[t]he officer[s'] subjective motivation[s are] irrelevant." *Brigham City v. Stuart*, 547 U.S. 398, 404–05 (2006) (citing *Bond v. United States*, 529 U.S. 334, 338 n.2 (2000)). As such, Anderson's evidence regarding the dismissed claims and Defendants' motives would not be allowed under Federal Rules of Evidence 401 through 403.

Anderson never accepted the Court's orders. During both pretrial conferences and an in-chambers conference held before jury selection, Anderson continued to pursue the dismissed claims and parties, including his claims from *Anderson I*. He also refused to sign the pretrial order because he believed Defendants' portions of the order were all lies. The Court explained the purpose of a pretrial order and that it does not mean Anderson agrees with Defendants' statements in it, but Anderson still refused to sign.

Anderson's discussions of non-pertinent facts and already-decided motions were repeatedly corrected throughout the life of this case, yet he continuously ignored the Court's instructions to leave certain topics. Given this history—and Anderson's tone and demeanor at the end of the January 14, 2022 pretrial conference—it seemed apparent that he intended to violate the Court's orders. The Court therefore felt compelled to warn Anderson that he would face contempt of court for such conduct at trial.

Despite that warning, Anderson's contumacious conduct continued at trial. Before the jury came in, Anderson raised a motion to continue. When he did not like the ruling, he talked

over the Court, attempted to impugn the Court's integrity, and refused to move on. That drew his first contempt warning of the day. The second came when he made inappropriate comments before a potential juror who was being questioned about a COVID-19 exposure. More inappropriate conduct and additional warnings followed.

Anderson's behavior grew worse when he began his opening statement and proceeded to tell the jury about the very things he was expressly and repeatedly told to avoid. He also informed the jury that he had been threatened by the Court, talked over opposing counsel and the Court, and made other contemptuous comments. Still, the Court gave Anderson another chance and again instructed him to tell the jury what happened on February 2, 2014. Anderson immediately violated the instruction, and when defense counsel objected, Anderson told the jury the Court had threatened to lock him up if he said certain things.

After the Court excused the jury, it again addressed Anderson regarding the proper scope of the case. Unfortunately, the conversation deteriorated, and the Court issued repeated warnings that Anderson's conduct would result in incarceration if his behavior did not change. Despite that, Anderson insisted that he should be allowed to discuss all his allegations and that he was being treated unfairly. When asked if he would limit his opening statement to what happened on February 2, 2014, he responded, "I am going to tell what I know." Several similar exchanges followed, during which the Court warned Anderson that he would have to follow the Court's instructions.

Though Anderson refused to commit, the Court stated that the jury would be reseated so Anderson could try again and gave Anderson a final warning to follow the Court's orders. Anderson responded, "I am just going to tell you, sir. I am going to tell it like it is." Enough

3

was enough; the Court held Anderson in contempt. To that point, he had received at least five contempt warnings.

After a short detention, the Court informed Anderson that further deviation from the subject matter of his claims would result in his case being dismissed with prejudice. The Court gave Anderson a very simple instruction to tell the jury what he thought happened on February 2, 2014, and nothing else. The Court asked Anderson whether he would comply with that order and instructed him to answer with "yes" or "no." Anderson repeatedly refused, stating instead that he would "try."

Dismissal would have been appropriate at that point, but the Court allowed Anderson to try once more; the jury was reseated; and Anderson restarted his opening statement. Though he initially followed the Court's instructions, he soon wandered back into forbidden areas. When defense counsel objected, it apparently emboldened Anderson, and he attempted to talk over counsel and the Court while making further contemptuous statements. The Court had no choice but to impose the ultimate sanction.

"Federal courts have inherent powers which include the authority to sanction a party or attorney when necessary to achieve the orderly and expeditions disposition of their dockets." *Budri v. Amin. Review Bd., U.S. Dep't of Labor*, 858 F. App'x 117, 127 (5th Cir. 2021)(per curiam) (quoting *In re Carroll*, 850 F.3d 811, 815 (5th Cir. 2017)). "Such powers may be exercised only if essential to preserve the authority of the court and the sanction chosen must employ the least possible power adequate to the end proposed." *Id.* (quoting *Nat'l Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996)). "A district court's inherent power to sanction contempt 'is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court

function.'" *In re U.S. Bureau of Prisons, Dep't of Justice*, 918 F.3d 431, 438 (5th Cir. 2019) (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990)). "[D]ismissals with prejudice are 'extreme sanction[s],'" warranted "only if (1) there is a clear record of delay or contumacious conduct by the plaintiff and (2) lesser sanctions would not serve the best interests of justice." *In re Deepwater Horizon* (*Horizon III*), 805 F. App'x 262, 265 (5th Cir. 2020) (per curiam) (quoting *In re Deepwater Horizon* (*Horizon II*), 922 F.3d 660, 666 (5th Cir. 2019)).

Dismissal with prejudice is warranted. First, the Court finds that Anderson's noncompliance was contumacious, which "means a willful disobedience of a court order." *Id.* (quoting *Horizon II*, 922 F.3d at 666). The Court gave Anderson every opportunity to follow its simple instructions and orders; he simply refused and did so repeatedly. The Court has no reason to think Anderson's behavior was anything except willful.

The Court also finds that lesser sanctions would be inadequate in this case. "Lesser sanctions include assessments of fines, costs, or damages against the plaintiff, conditional dismissal, dismissal without prejudice, and explicit warnings." *Id.* (quoting *In re Deepwarter Horizon* (*Horizon I*), 907 F.3d 232, 236 (5th Cir. 2018) (per curiam)). Despite this Court's many explicit warnings, including those that unequivocally included contempt and, later, dismissal with prejudice, Anderson proved resolute. Even a brief detention could not move him. As for monetary sanctions, Anderson is an indigent party with no means to pay. Finally, the Court has no reason to think that a dismissal short of one with prejudice would cease Anderson's unwavering misconduct.

That conduct was not merely contemptuous, it threatened the Court's ability to take the case to verdict. Anderson made several statements to the jury about facts the Court had excluded

5

under Rule 403 because the probative value was "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.  And while the Court tried its best to avoid dismissing the case as a sanction, the jury had already heard too much; Anderson's final outburst left no alternative.

Finally, declaring a mistrial and imposing a lesser sanction would just reward Anderson for his conduct by giving him the last-second continuance he requested when the trial started. Given his behavior throughout the case, the Court had no hope that a second trial would be any better.

For the reasons stated, this case is dismissed with prejudice.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 19th day of January, 2022.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE